Benjamin Leon BLUE, Appellant,

v.

The STATE of Texas.

No. 1254–99.

Court of Criminal Appeals of Texas,
En Banc.

Dec. 13, 2000.

Randolph E. Roll, Houston, for appellant.

Alan Curry, Asst. DA, Houston, Matthew Paul, State's Atty., Austin, for the State.

### OPINION

JOHNSON, J., announced the judgment of the Court, and delivered an opinion in which MANSFIELD, PRICE and HOLLAND, JJ., joined.

Appellant Benjamin Leon Blue was convicted of aggravated assault on a public servant. *See* TEX. PEN.CODE § 22.01(a)(1) & (b)(1). The jury assessed punishment at confinement for 10 years and a fine of $3,000. On appeal, appellant complained, *inter alia*, about the trial judge's comments to members of the venire at the beginning of the jury selection process. In an unpublished opinion, a divided panel of the court of appeals affirmed. *Blue v. State*, No. 01–96–00771–CR (Tex.App.—Houston [1st Dist.] June 25, 1998) (not designated for publication), 1998 WL 352724, 1998 Tex.App. LEXIS 4008. A rehearing *en banc* was granted on the court's own motion. The panel opinion was withdrawn, and a divided court again affirmed the conviction, issuing five opinions. *Blue v. State*, 983 S.W.2d 811 (Tex.App.—Houston [1st Dist.] 1998) (en banc). We granted appellant's petition for discretionary review solely to determine whether

the court of appeals erred in determining that error regarding admonishment of the jury was not properly preserved because no objection was made at trial. We reverse and remand.

The record shows that at the beginning of the jury selection process, the trial judge apologized to a group of prospective jurors for their long wait. In doing so, he stated:

[This case], which we are going on, is a situation where the attorney has been speaking to his client about what does he want to do. And when you are on the button like these cases, it's a question. Frankly, an offer has been made by the State or do I go to trial. And he has been back and forth so I finally told him I had enough of that, we are going to trial. You have been sitting out here and this is holding up my docket and I can't get anything done until we know if we are going to trial or not.

Frankly, obviously, I prefer the defendant to plead because it gives us more time to get things done and I'm sure not going to come out here and sit. Sorry, the case went away and we were all trying to work toward that and save you time and cost of time, which you have been sitting here and I apologize about that. I told the defendant that. Like I said, I have enough of this and going to trial.

The trial judge then attempted to explain to the jury why a defendant, though innocent, might not testify:

Because there are many reasons why defendants do not testify and I have seen many that have nothing to do with their guilt or innocence. I have seen defendants that are so nervous they could not hear the question much less respond to one. There are defendants that have speech impediments. There are defendants that, frankly, look guilty and they are not guilty and their attorney tells them I don't think you'd make a good witness because you cannot enunciate, not really set forth what you are trying to say very well. And you will be up there and stammering and stuttering, it probably won't look good for you. It's like I tell all the juries and I get Sister Teresa and I represent her for mass murder. And she is guilty as driven snow and the jury doesn't know that but the defendant's attorney knows it because she admitted it privately. What am I going to do; I am going to put Sister Teresa on the stand because nobody thinks she would tell a lie. She looks like she would be a very honest person and I can put her on the stand. I could have a defendant as innocent as can be and looks guilty and I wouldn't put her on the stand.

Appellant did not object to any of these statements.

On appeal, appellant asserted that when a trial judge makes a fundamentally erroneous statement, no objection is required for reversal. He also argued that an objection is futile because the judge himself made the comments. Finally, he contended that the error was incurable. The State argued that the failure to object waived any error.

The court of appeals held that the trial court's admonishment of the jury was not properly preserved because no objection was made to the trial judge's comments. *Blue*, 983 S.W.2d at 812. It applied the general rule that, in order to preserve for appellate review a complaint about a trial judge's comments during trial, counsel must object or otherwise bring the complaint to the trial judge's attention so that the judge has the opportunity to correct the error. Because appellant failed to object, the judgment in the trial court was affirmed. *Id.*

As the court of appeals noted, the general rule is that counsel must object to the trial judge's comments during trial in order to preserve error. *Blue*, 983 S.W.2d at 812; Tex.R. App P. 33.1.[1] However, pursuant to Texas Rule of Evidence 103(d), we are authorized to "tak[e] notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court." As we have previously stated, "Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process as to enjoy special protection in the system. A principle characteristic of these rights is that they cannot be forfeited. That is to say, they are not extinguished by inaction alone. Instead, if a defendant wants to relinquish one or more of them, he must do so expressly." *Marin v. State*, 851 S.W.2d 275, 278 (Tex.Crim.App.1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

More than eighty years ago, we stated that

> too much caution cannot be exercised in the effort to avoid impressing the jury with the idea that the court entertains any impressions of the case which he wishes them to know, and putting before them matters which should not enter into or affect their deliberations ... should in all cases be avoided. To the

jury the language and conduct of the trial court have a special and peculiar weight. The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial. Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved. The delicacy of the situation in which he is placed requires that he be alert in his communications with the jury, not only to avoid impressing them with any view that he has, but to avoid in his manner and speech things that they may so interpret.

*Lagrone v. State*, 84 Tex.Crim. 609, 209 S.W. 411, 415 (1919).[2] Similarly, more than one hundred years ago the United States Supreme Court commented that "[i]t is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference, and may prove controlling." *Starr v. United States*, 153 U.S. 614, 626, 14 S.Ct. 919, 923, 38 L.Ed. 841 (1894) (citing *Hicks v. United States*, 150 U.S. 442, 452, 14 S.Ct. 144, 147–48, 37 L.Ed. 1137 (1893)); *see also Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)

---

1. The briefs of both appellant and the state to the court of appeals were filed with that court in late 1996 and early 1997 respectively, and refer to former Rule 52(a) of the Texas Rules of Appellate Procedure. By the time the court of appeals handed down its opinion, the current rule on preservation of error was Rule 33.1.

2. *See also Anderson v. State*, 83 Tex.Crim. 261, 202 S.W. 944, 946 (1918) ("The law contemplates that the trial judge shall maintain an attitude of impartiality throughout the trial, and it has been often held that his views or impressions of the weight of the evidence or

upon the issues in the case may be conveyed to the jury as effectively by other means as by charge of the court."); *Simmons v. State*, 55 Tex.Crim. 441, 117 S.W. 141, 143 (1909) ("The trial judge is to the jury the Lord's anointed. His language and his conduct have to them a special and peculiar weight.").

The legislature has also prohibited, "at any stage of the proceeding previous to the return of the verdict, [the trial judge from] mak[ing] any remark calculated to convey to the jury his opinion of the case." Tex.Code Crim. Proc. art. 38.05.

(citing *Starr*).[3]

■ In this case, the judge's comments imparted information to the venire that tainted the presumption of innocence. A juror who knows at the outset that the defendant seriously considered entering into a plea agreement no longer begins with a presumption that the defendant is innocent. A juror who hears the judge say that he would have preferred that the defendant plead guilty might assume that the judge knows something about the guilt of the defendant that the juror does not. Surely, no trial judge would want an innocent man to plead guilty, no matter how much delay and expense he might be causing.

In *United States v. Bray*, 546 F.2d 851 (10th Cir.1976), the United States Court of Appeals for the Tenth Circuit held that it was plain error when the trial judge's comments and actions damaged the presumption of innocence in the presence of the jury:

> We hold that the court committed plain error in setting Bray's bail in the presence of the jury.... By setting bail within the jury's presence and admonishing the marshals to "lock him up" if bail was not met, the court effectively vitiated the presumption of innocence.... A trial judge has both great responsibility and discretion in conducting the trial of a case. He should be the exemplar of dignity and impartiality. He must exercise restraint over his conduct and statements in order to maintain an atmosphere of impartiality. We are cognizant of the strain and emotional stress imposed upon a trial judge who is endeavoring to conduct the trial in a

firm, dignified and restrained manner when he is confronted by a litigant who, like Bray, treats him with disrespect and who openly insults and humiliates him. Even so, it is prejudicial error for the judge to make remarks that clearly import his feelings of hostility toward the defendant. The remarks of the trial judge relative to Bray's bond, with the inferences which must be drawn, cannot be justified or rationalized as fair and impartial. These remarks constitute plain error.

*Id.* at 859. Similarly, the comments of the judge in this case cannot be viewed as fair and impartial. While the judge himself might have been able to maintain impartiality in presiding over the trial, despite his apparent hostility toward the defendant for causing delay, his comments "vitiated the presumption of innocence" before the venire, adversely affecting appellant's right to a fair trial.

The comments of the trial judge, which tainted appellant's presumption of innocence in front of the venire, were fundamental error of constitutional dimension and required no objection. *Bray, supra; United States v. Lanham*, 416 F.2d 1140 (5th Cir.1969) (actions of trial judge who improperly injected himself into role of prosecutor during trial destroyed neutrality and impartiality of trial atmosphere, defendant's credibility, and defendant's presumption of innocence, and constituted plain error); *United States v. Haywood*, 411 F.2d 555 (5th Cir.1969) (trial judge who, in presence of jury, twice interrupted charge and informed defendant of right to allocution, before case was submitted to jury for decision effectively destroyed de-

---

**3.** More than forty years ago, the Fifth Circuit stated that trial judges "must not only refrain from actions which are prejudicial but as well those which do or might give such impression to a jury of laymen whose awesome respect for the institution of the [j]udge leads them to accord great and perhaps, decisive significance to his every word or intimation...." *Papalia v. United States*, 243 F.2d 437, 442 (5th Cir.1957).

fendant's presumption of innocence and committed plain error); *see also United States v. Filani,* 74 F.3d 378 (2d Cir.1996) (trial court's extended and critical questioning of defendant gave jury impression of partiality and was plain error); *United States v. Fernandez,* 496 F.2d 1294 (5th Cir.1974) (prosecutor's argument that sought to impose a "presumption of guilt," together with failure of charge to instruct on the presumption of innocence, was plain error).

We hold that appellant's failure to object to the trial judge's comments did not waive error. Appellant's ground for review is sustained. The judgment of the court of appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.

MANSFIELD, J., filed a concurring opinion.

KEASLER, J., filed an opinion concurring in the judgment.

MEYERS, J., concurred in the judgment.

KELLER, J., filed a dissenting opinion, in which McCORMICK, P.J., and WOMACK, J., joined.

MANSFIELD, J., delivered a concurring opinion.

Because I believe that the comments by the trial judge to the jury were so fundamentally prejudicial that appellant's right to a fair trial was denied, I join the opinion of the majority.

It is important to note initially the court of appeals affirmed the judgment of the trial court *en banc. Blue v. State,* No. 01–96–00771–CR, 1998 WL 352724 (Tex. App.—Houston [1st Dist.] 1998). Four justices joined the opinion written by Justice Mirabal, and two justices wrote concurring opinions joining Justice Mirabal's

opinion. Justice Cohen wrote a dissenting opinion which was joined by three other justices, and Justice O'Connor also wrote a dissenting opinion. It is unusual for a court of appeals to sit *en banc* and then issue five separate published opinions in a case.

The trial judge apologized to the venire for their long wait outside the courtroom. He told them:

The second case [this one], which we are going on, is a situation where the attorney has been speaking to his client about what does he want to do. And when you are on the button like these cases, it's a question. Frankly, an offer has been made by the State or do I go to trial. And he has been back and forth so I finally told him I had enough of that, we are going to trial. You have been sitting out here and this is holding up my docket and I can't get anything done until we know if we are going to trial or not.

Frankly, obviously, I prefer the defendant to plead because it gives us more time to get things done and I'm sure not going to come out here and sit. Sorry, the case went away and we were all trying to work toward that and save you time and cost of time, which you have been sitting here and I apologize about that. I told the defendant that. Like I said, I have enough of this and going to trial.

The trial judge then explained to the jury why a defendant, though innocent, might not testify:

Because there are many reasons why defendants do not testify and I have seen many that have nothing to do with their guilt or innocence. I have seen defendants that are so nervous they could not hear the question much less respond to one. There are defendants that have speech impediments. There

are defendants that, frankly, look guilty and they are not guilty and their attorney tells them I don't think you'd make a good witness because you cannot enunciate, not really set forth what you are trying to say very well. And you will be up there and stammering and stuttering, and it probably won't look good for you.

It's like I tell all the juries and I get Sister Teresa and I represent her for mass murder. And she is guilty as driven snow and the jury doesn't know that but the defendant's attorney knows it because she admitted it privately. What am I going to do: I am going to put Sister Teresa on the stand because nobody thinks she would tell a lie. She looks like she would be a very honest person and I can put her on the stand. I could have a defendant as innocent as can be and looks guilty and I wouldn't put her on the stand.

In explaining the presumption of innocence, the trial judge stated:

I can tell you in the forty years that this courthouse has been here, in this courtroom, several people that have come through here have been found not guilty by juries and everyone of them are here by indictment.

Appellant did not object to any of the above statements. The State, citing *Cockrell v. State*, 933 S.W.2d 73 (Tex.Crim.App. 1996), contends that appellant, by not objecting, waived error.

While I agree that error is normally waived absent a timely objection, the doctrine of waiver does not apply to statements made by a trial judge that rise to the level of fundamental error. It is clear to me, in this case, the statements of the trial judge were fundamentally erroneous. We are authorized, under Texas Rule of Criminal Evidence 103, to take notice of fundamental errors even if they were not brought to the attention of the trial court.

A defendant in a criminal case is entitled to the presumption of innocence. Essential to the presumption of innocence are the rights to be tried by an impartial jury and to be deprived of life, liberty or property only by due course of law. U.S. CONST. amend. V, VI; TEX. CONST art. I. §§ 10, 19. The trial judge is required to maintain an attitude of impartiality throughout the trial. *Lagrone v. State*, 84 Tex.Crim. 609, 209 S.W. 411, 415 (1919). The trial judge is not permitted to comment on the weight of the evidence in the jury's presence or convey to the jury his opinion of the case at any stage of the trial. Tex.Code Crim. Proc. Art. 38.05. Comments by the trial judge constitute reversible error if they are reasonably calculated to prejudice the defendant's rights, though such error may be waived by the absence of a timely objection. *Sharpe v. State*, 648 S.W.2d 705, 706 (Tex.Crim.App. 1983). We have held that comments by the prosecutor to the effect that defense counsel has no duty to refrain from putting on witnesses who will lie or to see "that justice is done" are reversible error, implicating due process. *Wilson v. State*, 938 S.W.2d 57, 61 (Tex.Crim.App.1996).

Turning to the instant case, the trial judge ignored his obligation to act as an impartial arbiter. His first statement told the jury, essentially, the State and appellant were discussing how appellant would plead but appellant was having difficulty in deciding how to plead.[1] Furthermore, the statement told the jury it was, in the opinion of the trial judge, appellant's fault for the delay in trying the case and that everyone would save time if appellant would simply plead (presumably guilty).

---

1. Evidence of plea discussions is not admissible. Tex.R.Crim. Evid. 410.

The second statement told the jury a defense attorney may have an obligation to present false testimony.

The third statement told the jury that, in the judge's opinion, very few defendants, over a forty-year period, had been found not guilty.

How can a jury of lay persons be expected to accord a criminal defendant the presumption of innocence and his right to a fair and impartial trial when the trial judge tells them:

1. the defendant was trying to make a plea bargain with the State and the delay in trying the case was due to his prolonging the negotiations (an innocent person would not agree to a plea bargain in the opinion of most lay persons)?

2. defense lawyers have no scruples against putting on false testimony if it would benefit their clients?

3. over forty years, very few defendants have been found not guilty in the courtroom in which appellant is being tried?

Appellant's constitutional right to be tried by an impartial tribunal is sacrosanct, regardless of the evidence against him. See *Tumey v. Ohio*, 273 U.S. 510, 535, 47 S.Ct. 437, 71 L.Ed. 749 (1927). The standard of review for errors of constitutional magnitude is set forth in Texas Rule of Appellate Procedure 44.2(a):

If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable

doubt that the error did not contribute to the conviction or punishment.[2]

Accordingly, because I am convinced the comments of the trial court, taken together, denied appellant his constitutional right to a fair trial, and thus, in the aggregate, amounted to constitutional error, I join the opinion of the majority reversing the judgment of the court of appeals and remanding the cause to that court for further proceedings.

KEASLER, J., delivered this concurring opinion.

I concur only in the judgment of the Court and write separately because I think the majority fails to adequately explain:

- why Tex.R. Evid. 103(d) applies to non-evidentiary matters;
- how this case differs from those where we have held that error was waived under Tex.R.App. Pro. 33.1; and
- why this case does not warrant a harm analysis.

*Procedural History*

We granted review to determine whether Blue had to object to the trial judge's statements to the venire in order to preserve error. The Court of Appeals held that under Rule 33.1,[1] Blue did not preserve his complaint for appeal because he failed to object at trial.[2] Four justices joined the majority opinion, two justices wrote concurring opinions, and two issued dissenting opinions.

In his petition, Blue argues that he can complain about the trial judge's statements

---

**2.** See also, *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

**1.** *See Appendix.*

**2.** *Blue v. State,* 983 S.W.2d 811, 812 (Tex. App.—Houston [1st Dist.] 1998) (en banc)

(citing TEX.R.APP. PRO. 33.1; *Sharpe v. State,* 648 S.W.2d 705, 706 (Tex.Crim.App.1983); *Smith v. State,* 959 S.W.2d 530, 537 (Tex. App.—Tyler 1995, no pet.); *Moore v. State,* 907 S.W.2d 918, 923 (Tex.App.—Houston [1st Dist .] 1995, pet. ref'd)).

to the panel for the first time on appeal based on the fundamental error concept.[3] Blue points out that we still recognize the notion of fundamental error in Rule 103(d), which states that "[i]n a criminal case, nothing in these rules precludes taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court." In reply, the State cites Rule 33.1 and argues that "all but the most fundamental evidentiary and procedural rules (or 'rights') are forfeited if not asserted at or before trial."[4]

### *Rule 103(d)*

Blue and the State disagree as to the role of Rule 103(d) with respect to Rule 33.1. Recently, at least two Courts of Appeals have grappled with similar issues, specifically looking at whether the Rule 103(d) "fundamental error" exception overrides the strict requirements of Rule 33.1 and applies beyond evidentiary issues.[5] They concluded that question had yet to be answered by this Court.[6]

The majority opinion completely fails to address this issue. Without even citing to Rule 33.1, the majority summarily holds that according to Rule 103(d) we are authorized to review the trial judge's statements, even though there was no objection, because they constituted fundamental error of constitutional magnitude. The majority does not take note of or distinguish this case from the line of non-evidentiary cases where we have held that error is not preserved under Rule 33.1 if there is no objection.[7] Additionally, there is no explanation as to why Rule 103, which is entitled "Rulings on Evidence," applies to non-evidentiary matters, even though Justice Taft's concurring opinion implies that 103(d) is limited to evidentiary matters.[8]

Perhaps the lower courts' focus on whether 103(d) applies to non-evidentiary matters and the majority's application of 103(d) to this case is the problem. This rule of evidence was not meant to be an exception to the current law but was meant to codify existing law .[9] As such,

3.  Citing *Hay v. State*, 472 S.W.2d 157, 158, 159 (Tex.Crim.App.1971); *Brewer v. State*, 572 S.W.2d 719, 721 (Tex.Crim.App.1978); *Hart v. State*, 447 S.W.2d 944, 952 (Tex.Crim. App.1969); *Dempsey v. State*, 387 S.W.2d 891, 893 (Tex.Crim.App.1965).

4.  Citing *Wilson v. State*, 977 S.W.2d 379, 380 (Tex.Crim.App.1998); *Posey v. State*, 966 S.W.2d 57, 62 (Tex.Crim.App.1998); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996), *cert. denied*, 520 U.S. 1173, 117 S.Ct. 1442, 137 L.Ed.2d 548 (1997).

5.  *See Devis v. State*, 18 S.W.3d 777, 778 (Tex. App.—San Antonio 2000, no pet.) (stating that the role of 103(d) with respect to 33.1 is unsettled law); *Hoang v. State*, 997 S.W.2d 678, 680–81 (Tex.App.—Texarkana 1999, no pet.) (stating that the Court of Criminal Appeals has not decided this issue).

6.  *See id.*

7.  *See generally Fuentes v. State*, 991 S.W.2d 267, 276 (Tex.Crim.App.1999) (holding trial court comments could not be reviewed for the first time on appeal); *Henderson v. State*, 962 S.W.2d 544, 559 (Tex.Crim.App.1997) (failing to object to trial judge obtaining outside consultation waived error); *Cockrell*, 933 S.W.2d at 89 (waiving improper jury arguments made by prosecution because no trial objection); *Valencia v. State*, 946 S.W.2d 81, 82 (Tex. Crim.App.1997) (waiving objection to improper jury argument during punishment phase because no objection); *Nelson v. State*, 661 S.W.2d 122, 124 (Tex.Crim.App.1983) (finding error was waived when there was no timely objection to trial court comments); *Woods v. State*, 653 S.W.2d 1, 6 (Tex.Crim. App.1982) (holding litigant must object to trial court comments).

8.  *See Blue*, 983 S.W.2d at 815; *see also Devis*, 18 S.W.3d at 778; *Hoang*, 997 S.W.2d at 680–81.

9.  TEX.R. EVID. 103(d) official comment (West 1988).

whether 103(d) necessarily applies is beside the point. In determining whether unpreserved error can be raised for the first time on appeal, the focus should not be on whether 103(d) permits review but on whether existing law permits review. More specifically, we should look at the current law as to fundamental error.

### Fundamental Error—Marin v. State

We have consistently applied rules of procedural default and will continue to do so. In *Marin v. State*, we summarized years of case law and placed rights into three separate categories: [10]

- The first category of rights are those that are "widely considered so fundamental to the proper functioning of our adjudicatory process ... that they cannot be forfeited ... by inaction alone." [11] These are considered "absolute rights." [12]
- The second category of rights is comprised of rights that are "not forfeitable"—they cannot be surrendered by mere inaction, but are "waivable" if the waiver is affirmatively, plainly, freely, and intelligently made. [13] The

trial judge has an independent duty to implement these rights absent any request unless there is an effective express waiver. [14]

- Finally, the third category of rights are "forfeitable" and must be requested by the litigant. [15] Examples of error forfeited if not insisted upon at trial include improper jury argument, [16] *Batson* error, [17] admission of a confession taken in violation of the Fifth Amendment, [18] admission of extraneous offense evidence, [19] certain jury charge errors, [20] and a statute of limitations defense. [21] Many rights of the criminal defendant, including some constitutional rights, are in this category and can be waived by inaction. [22]

We held that the requirement of Rule 33.1 that a defendant object in order to preserve error does not apply to rights falling within either of the first two categories. [23]

The majority concludes that the trial judge's comments which tainted the presumption of innocence were fundamental error of constitutional dimension and required no objection. In support of this

**10.** 851 S.W.2d 275, 278–80 (Tex.Crim.App. 1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App. 1997).

**11.** *Id. at* 278.

**12.** *Id.* at 279.

**13.** *Id.* at 279–280.

**14.** *Id.*

**15.** *Id.*

**16.** *See Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App.1996).

**17.** *See Batiste v. State*, 888 S.W.2d 9, 16 n. 5 (Tex.Crim.App.1994).

**18.** *See Harris v. State*, 827 S.W.2d 949, 953 (Tex.Crim.App.1992), *cert. denied*, 506 U.S. 942, 113 S.Ct. 381, 121 L.Ed.2d 292 (1992).

**19.** *See Norris v. State*, 902 S.W.2d 428, 439 (Tex.Crim.App.1995).

**20.** *See Pondexter v. State*, 942 S.W.2d 577, 588 (Tex.Crim.App.1996) (plurality); *Green v. State*, 934 S.W.2d 92, 108 (Tex.Crim.App. 1996); *Ransom v. State*, 920 S.W.2d 288, 303 (Tex.Crim.App.1996); *Jackson v. State*, 898 S.W.2d 896, 899 (Tex.Crim.App.1995).

**21.** *See Proctor v. State*, 967 S.W.2d 840, 844 (Tex.Crim.App.1998); *State v. Yount*, 853 S.W.2d 6, 9 (Tex.Crim.App.1993).

**22.** *Marin*, 851 S.W.2d at 279.

**23.** *See. id.* at 279–80 (referring to Rule 52(a) which is now Rule 33.1).

conclusion the majority cites to several United States Courts of Appeals cases where the trial judge's statements constituted "plain error." The dissent argues that Texas has no counterpart to the "plain error" doctrine found in the Federal Rules of Civil Procedure. While I question the reliance on these cases, we have in a recent opinion stated that "[t]he traditional term in Texas' criminal law that corresponds to 'plain error' is 'fundamental error.' "[24] The dissent also argues that the presumption of innocence is not an absolute requirement. Regardless of whether a violation of the presumption of innocence is a violation of an absolute right, it is clear to me that the violation of the right to an impartial judge is an absolute right. The judge's comments in this case violated that right.

At the outset of jury selection, this judge essentially told the venire that the State and Blue were engaging in plea bargaining and Blue could not decide what to do. He stated that he believed Blue should plead because a trial was a waste of time, implying he thought Blue was guilty. He also blamed Blue for the delay that was costing the venire time and money. To top it off, the judge ended with a hypothetical case in which the defense attorney puts Sister Teresa on the stand because no one thinks that she would tell a lie even though Sister Teresa admitted her guilt to the attorney.

The dissent argues that these comments do not constitute bias because there is no "systemic source of bias" or lack of "impartiality in actual fact." I find that the statements taken as a whole do show partiality. The trial judge went so far as to say that he would prefer that the defendant plead. Why else would a judge want a defendant to plead unless he had prejudged the defendant's guilt? While we rarely see such statements as these,[25] there will be a few cases where the judge's statements when viewed objectively are so egregious as to render him biased. This is one of those cases.

No matter what the evidence was against him, Blue had a right to an impartial judge.[26] The right to an impartial judge is so sacred that the United States Supreme Court has declared a violation of this right to be "structural" error.[27] The presence of a biased judge on the bench is a structural defect in the trial mechanism.[28] Although, as the dissent points

---

**24.** *Jimenez v. State*, 32 S.W.3d 233, 238–39 (Tex.Crim.App.2000).

**25.** *See generally Hay v. State*, 472 S.W.2d 157, 158 (Tex.Crim.App.1971) (reversing where judge sent "not guilty" verdict back to the jury and told them it was "wrong").

**26.** *See Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927); *see also Weiss v. United States*, 510 U.S. 163, 178, 114 S.Ct. 752, 761, 127 L.Ed.2d 1 (1994) (citing *In re Murchison*, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955); *Tumey*, 273 U.S. at 532, 47 S.Ct. at 444); *Lagrone v. State*, 84 Tex.Crim. 609, 209 S.W. 411, 415 (1919); *Anderson v. State*, 83 Tex.Crim. 261, 202 S.W. 944, 946 (1918).

**27.** *Neder v. United States*, 527 U.S. 1, 13, 119 S.Ct. 1827, 1833, 144 L.Ed.2d 35 (1999) (cit-

ing *Tumey*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749); *Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584, 1588, 137 L.Ed.2d 906 (1997) (citing *Tumey*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749), *Johnson v. United States*, 520 U.S. 461, 468–69, 117 S.Ct. 1544, 1549–50, 137 L.Ed.2d 718 (1997) (citing *Tumey*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749); *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993) (citing *Tumey*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749).

**28.** *Arizona v. Fulminante*, 499 U.S. 279, 309–310, 111 S.Ct. 1246, 1265, 113 L.Ed.2d 302 (1991).

out, there are some "structural" errors that can be forfeited, I do not think that the right to an impartial judge should be a right that the defendant can forfeit. This right should be included in the very select class of absolute rights.

Furthermore, I believe that our prior cases holding an objection is required to preserve error [29] are distinguishable from this case because the trial judge's comments were "so egregious" as to deem him biased, and because the right violated—the right to an impartial judge—is one of the absolute rights that do not require an objection under *Marin*. This case is highly unique and litigants should not view this holding as an invitation to appeal without making proper, timely objections.

### Harm Analysis

Without explanation, the majority opinion does not conduct a harm analysis. We have held that except for certain federal constitutional errors labeled by the United States Supreme Court as "structural", no error is categorically immune from a harmless error analysis.[30] If the majority is going to hold the trial judge's statements violated the presumption of innocence, then a harm analysis is required because it is not a structural error. However, since I believe that the right violated was the right to an impartial judge, which is a structural error, a harm analysis is not warranted.

### Conclusion

Considering that the judge's comments to the venire were not evidence, it is not clear to me whether Rule 103(d) would apply. Nevertheless, the doctrine of fundamental error exists apart from Rule 103(d). I find that the trial judge's re-

marks in this case violated an absolute systemic right under *Marin*—the right to an impartial judge.

I concur in the judgment of the majority reversing the judgment of the court of appeals and remanding for further proceedings.

### APPENDIX

Tex.R.App. Pro. 33.1 provides:

(a) In General. As a prerequisite to presenting a complaint for appellate review, the record must show that:

(1) the complaint was made to the trial court by a timely request, objection, or motion that:

(A) stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context; and

(B) complied with the requirements of Texas Rules of Civil or Criminal Evidence or the Texas Rules of Civil or Appellate Procedure; and

(2) the trial court:

(A) ruled on the request, objection, or motion, either expressly or implicitly; or

(B) refused to rule on the request, objection, or motion, and the complaining party objected to the refusal.

KELLER, J., delivered a dissenting opinion in which McCORMICK, P.J., and WOMACK, J., joined.

Appellant concedes that he did not object to the trial judge's comments. He offers three reasons for exempting his situation from the usual requirement that a

---

**29.** *See supra* notes 4 and 7.

**30.** *Cain v. State,* 947 S.W.2d 262, 264 (Tex. Crim.App.1997).

timely objection is necessary to preserve error: (1) an objection would be futile, (2) the prejudice created by the trial judge's remarks was incurable, and (3) the type of error involved is "fundamental"—requiring no objection to preserve it. The Court agrees with appellant's third reason and reverses the conviction. I disagree and would hold that appellant has forfeited his claim.

### 1. Futile

Appellant claims that an objection to the trial judge's comments would be futile because, if the trial judge agreed with the objection, he would not have made the comments to begin with. This reasoning, if followed, would relieve defendants of the obligation to object to any comment made by a trial judge. But our caselaw is to the contrary: a defendant must object to a trial judge's impermissible comment to preserve error on appeal.[1] Moreover, appellant's premise is wrong: trial judges often do respond with curative action to correct their own improper statements when one of the parties brings the impropriety to the trial judge's attention.[2]

A rationale similar to that articulated by appellant has been utilized by this Court in a different context: claims of ineffective assistance of counsel. We have observed that, when defense counsel commits errors at trial, a contemporaneous objection to such errors cannot be expected.[3] One would not expect defense counsel to recognize and object to his own errors as they occur.[4] And the defendant cannot object apart from counsel. Due to his lack of knowledge in legal procedure, a defendant may not even recognize his attorney's errors (after all, navigating the legal system is what the attorney is there for) and, in any event, the defendant should not have to risk alienating the attorney, who is the defendant's only advocate in the legal proceedings.[5]

The trial judge occupies a different position than a defendant's attorney. When the defendant's trial attorney makes a mistake, the defendant ordinarily has no advocate who can bring the mistake to the attorney's attention. But when the trial judge makes a mistake, the defendant does have an advocate—his attorney—who can bring that mistake to the trial judge's attention. Because the defendant has an advocate who can press his claims at trial, there is no reason to exempt him from the usual rules of procedural default.[6]

Perhaps the defendant is complaining that the remark is so blatantly improper or egregious that the trial judge is unlikely to listen to criticism. But there is no obvious relationship between how blatantly wrong or improper a remark is and how likely the judge is to realize the improprie-

---

1. *Havard v. State,* 800 S.W.2d 195, 211 (Tex. Crim.App.1989); *Sharpe v. State,* 648 S.W.2d 705, 706 (Tex.Crim.App.1983); *White v. State,* 601 S.W.2d 364, 366 (Tex.Crim.App.1980).

2. For example, *see Fletcher v. State,* 960 S.W.2d 694, 701 (Tex.App.—Tyler 1997); *Hicks v. State,* 901 S.W.2d 614, 617 (Tex. App.—San Antonio 1995); *Silva v. State,* 831 S.W.2d 819, 823–824 (Tex.App.—Corpus Christi 1992); *Tennison v. State,* 814 S.W.2d 484, 485–486 (Tex.App.—Waco 1991).

3. *Robinson v. State,* 16 S.W.3d 808, 809–810 (Tex.Crim.App.2000).

4. We do not expect counsel to detect his own errors even after the fact. *Id.* at 812.

5. *Id.* 809–810.

6. *See Henderson v. State,* 962 S.W.2d 544, 558 (Tex.Crim.App.1997)(ineffective assistance claim against an attorney who represented the defendant in prior proceedings but was not a member of the defense team at the time of trial was forfeited when not raised at trial).

ty when brought to his attention. In fact, one could contend that milder remarks would be less likely to evoke a curative response because they are not as obviously wrong. Attempting to second-guess a trial judge's willingness to issue curative action based upon the egregiousness of the remark is a purely speculative endeavor. Instead of resorting to speculation, we should trust trial judges to act in accordance with their duties and give them the opportunity to cure mistakes resulting from their own improper remarks. In many cases they will issue, and in fact have issued, curative instructions that render appellate correction unnecessary.

## 2. Incurable

Appellant next contends that the error was incurable. He alleges that an instruction to disregard would not have cured the prejudice created by the trial judge's comments. In this case a timely objection could have prevented the trial judge from conveying most of the allegedly prejudicial information to the jury—increasing the likelihood that an instruction to disregard would have been effective.

But assuming *arguendo* that appellant is correct on this point, he is not relieved of his obligation to preserve error. In *Cockrell v. State*, we held that, in the case of improper prosecutorial argument, even incurable error must be preserved by a request for relief—even when a mistrial is the only relief that can adequately address the error, the defendant must move for a mistrial to complain on appeal.[7] That the comments came from the judge rather than the prosecutor does not render the error "more" incurable. Whether the incurable, improper comments come from

the prosecuting attorney or the trial judge, the impact is the same: the only way to erase the prejudice flowing from the error is to declare a mistrial. But by failing to ask for a mistrial, the defendant forfeits the error.

And there are good reasons to require the request for a mistrial. If a mistrial occurs, then the parties save whatever time they would have expended for the rest of the trial and for the appeal that would have followed. In the present case, the time saved would have been significant: the trial judge could have dissolved the venire, called a new venire, and proceeded with a trial uninfected by the judge's comments.

## 3. Fundamental

Appellant contends that the trial judge's remarks constitute fundamental error under Texas Rule of Evidence 103(d). Citing *Tumey v. Ohio*[8] for the proposition that he has the right to an impartial judge, appellant also contends that the unpreserved error should be corrected due to the trial judge's unique position of authority. The Court cites both Rule 103(d) and *Marin v. State*[9] for the proposition that some errors require no objection to be preserved. The Court then emphasizes the heavy influence that a trial judge's comments may have on the course of a trial. Finally, the Court concludes that the comments violated the defendant's presumption of innocence and that such error is so fundamental that no objection is required to preserve it. In holding that the error need not be preserved, the Court relies upon federal circuit cases applying the federal "plain error" rule.

---

7. 933 S.W.2d 73, 89 (Tex.Crim.App.1996).

8. 273 U.S. 510, 523, 47 S.Ct. 437, 71 L.Ed. 749 (1927)

9. 851 S.W.2d 275 (Tex.Crim.App.1993), *overruled on other grounds, Cain v. State*, 947 S.W.2d 262, 264 (Tex.Crim.App.1997).

There are also two concurring opinions with varying reasons for reversing the trial court's judgment. Judge Keasler identifies the error as the denial of an impartial judge. He contends that this error is "structural," and that this particular structural error is the type of error that constitutes the violation of an absolute requirement. Judge Mansfield identifies the error as the denial of an "impartial tribunal" because of the prejudicial effect of the comments upon the jury. Judge Mansfield would find that the error is "fundamental" under Rule 103(d), and for that reason, immune from preservation of error requirements. However, Judge Mansfield does not contend that the error is "structural" but would remand the case to the Court of Appeals for a harm analysis. For several reasons, I disagree with the various opinions' arguments for overturning the trial court's judgment in this case.

First, I disagree with the Court's and Judge Mansfield's reliance upon Rule 103(d). Rule 103(d) does not apply outside the evidentiary context. Rule 103 is titled, "Rulings on Evidence" and is part of the Texas Rules of Evidence. Further, subsection (d) is not a grant of authority to take notice of fundamental errors, nor does that subsection impose any require-ment that a court take notice of certain errors; it simply clarifies that the rules do not *preclude* taking notice of fundamental errors.[10] As Judge Keasler correctly observes, the rules committee stated that subsection (d) was not intended to change current law.[11]

Second, I disagree with the Court's reliance upon federal cases interpreting the federal plain error rule. Except as provided by Texas Code of Criminal Procedure, Article 36.19 in the context of the written jury charge,[12] Texas has no counterpart to the "plain error" rule found in the Federal Rules of Criminal Procedure.[13] The question, instead, is how the error is categorized under our prior caselaw. The controlling case is *Marin v. State,* which sets out three categories of error for preservation purposes: (1) absolute requirements and prohibitions, (2) rights that must be implemented by the system unless expressly waived, and (3) rights that must be implemented upon request (rights that are forfeited absent affirmative request).[14] The kind of error involved, not the egregiousness of a particular error, determines in Texas state court whether a party must preserve error by lodging an objection.

The comments here did not deprive the trial court of jurisdiction or involve some other absolute requirement or prohibition

---

**10.** Rule 103(d) states:

> In a criminal case, nothing in these rules *precludes* taking notice of fundamental errors affecting substantial rights although they were not brought to the attention of the court.

(Emphasis added).

**11.** Notes and comments, Tex.R.Crim. Evid. 103 (West 1988).

**12.** *See Almanza v. State,* 686 S.W.2d 157 (Tex. Crim.App.1984).

**13.** Judge Keasler cites *Jimenez v. State,* 32 S.W.3d 233, 238–39 (Tex.Crim.App., 2000) as stating that the term that corresponds to "plain error" in Texas law is "fundamental error." While that statement may be true, that does not mean that a generic counterpart to the federal plain error rule exists in Texas. The wording of and comments to Rule 103(d) reveal that that rule is not a counterpart to the federal plain error rule. As explained below, our caselaw takes a different approach to defining "fundamental error" than taken by the federal courts with respect to "plain error." Our approach in the jury charge arena is similar to the federal plain error doctrine but is based upon a statute and applies only in the limited context of errors involving the jury charge.

**14.** 851 S.W.2d at 279.

(i.e. *Marin* category one). Nor did the comments deprive the defendant of a waivable-only right (i.e. *Marin* category two). The danger the present comments posed is the possible prejudice they may have created in the minds of the jury. But as *Cockrell* illustrates, a party's failure to request relief will forfeit error even when the likely prejudicial effect on the jury is so great that a mistrial would be required to cure the harm. That is, erroneous comments that are likely to have a prejudicial impact on a jury's decision-making, from whatever source those comments are derived, are forfeitable errors (i.e. *Marin* category three).

Finally, I disagree with the assertion by both Judge Keasler and appellant that the present case involves the denial of an impartial judge as contemplated in *Tumey*.[15] In *Tumey*, the trial judge was deemed to lack impartiality because he had a financial interest in the outcome of the case.[16] This financial interest was systemic—under state and municipal laws, the trial judge was paid out of the fines he imposed but was not compensated if he imposed no fines.[17] The record in the present case reveals no such systemically created interest, financial or otherwise. The lack of a systemically created interest in the case has been cited as a reason to distinguish *Tumey* from cases involving allegedly im-

proper judicial comments.[18] Absent a systemic source of bias, the record should show that the judge lacks impartiality in actual fact before an appellate court concludes that the defendant has been deprived of an impartial judge, and hence suffered structural error.

There is no showing in this record of any actual bias on the part of the trial judge. The two comments at issue here, while clearly improper, do not make such a showing. In the first comment, the trial judge expressed frustration with the defendant's inability to decide whether he wanted to plead guilty or go to trial and the resulting delay in the proceedings. The judge should not have expressed his frustrations to the venire because, in doing so, he alerted them to the presence of plea negotiations—a matter that ordinarily should not be revealed to the jury.[19] But the trial judge's statements do not necessarily reflect a pre-determination of the defendant's guilt. And, had the trial judge merely thought those comments to himself—and those thoughts were somehow discovered after trial—we would not be holding that the judge lacked impartiality. It is the judge's lack of discretion in sharing those thoughts with the jury that poses the problem. But that lack of discretion does not by itself show that the trial judge lacked impartiality. And the defendant

---

**15.** Whether *Tumey* error constitutes the violation of an "absolute requirement" as Judge Keasler contends is an open question that I would leave for another day. I would note that an error is not immune from preservation requirements simply because it is "structural," and hence, immune from a harmless error analysis. At least two errors listed by the Supreme Court as "structural"—the right of self-representation at trial and the right to a public trial—are also forfeitable. *Cain v. Peters*, 972 F.2d 748, 749–750 (7th Cir.1992), *cert. denied*, 507 U.S. 930, 113 S.Ct. 1310, 122 L.Ed.2d 698 (1993)(right to self-representation); *see also Faretta v. California*, 422 U.S. 806, 821, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)("Unless the accused has *acquiesced* in

such representation, appointing counsel to conduct his defense does not give the accused the defense guaranteed by the Constitution")(emphasis added); *Levine v. United States*, 362 U.S. 610, 619, 80 S.Ct. 1038, 4 L.Ed.2d 989 (1960)(right to public trial).

**16.** *Id.* at 523, 47 S.Ct. 437.

**17.** *Id.*

**18.** *United States v. Cooper*, 51 M.J. 247, 250 (CAAF 1999); *Kalapp v. State*, 729 So.2d 987, 989 (Fla.App. 5 Dist.1999).

**19.** *See* Tex.R. Evid. 408.

has not alleged any other indication of bias—such as arbitrary or clearly erroneous adverse rulings.

As for the judge's comments regarding a defendant's failure to testify, it is obvious that those comments were a well-intentioned, though inartful, attempt to instruct the jury not to hold a defendant's failure to testify against him. The Supreme Court has recognized that a jury's natural tendency is to draw adverse inferences from a defendant's silence.[20] The trial judge's instruction here appears to be intended to reduce the likelihood that the jury in the present case would draw such inferences by explaining that even guilty people might testify. If the jury believed that guilty people never testified, then it might believe that a defendant is more likely to be guilty if he does not testify. Similarly, if the jury believed that a defense attorney would never put a defendant on the stand who has privately admitted his guilt, then the jury might believe that fact increases the likelihood that a non-testifying defendant is guilty—that the defendant may be declining to testify because his attorney would not put him on the stand due to a private admission of guilt.

The problem is that the judge's instruction is an inaccurate statement of the law. Attorneys are not allowed to suborn perjury. And the trial judge's instruction could have the unintended consequence of prejudicing a defendant who chooses to testify by raising in the minds of the jury the idea that the defendant may be lying on the stand. But a trial judge cannot know before trial whether a defendant will testify at trial. That is a decision the defendant is entitled to make during his case-in-chief (perhaps even in rebuttal). And there is

no allegation here that the trial judge somehow anticipated that this particular defendant was planning to testify at trial and that he gave this instruction as a way of sabotaging the defendant's planned testimony. That the trial judge made mistakes in his comments to the jury-even serious ones-does not mean that he lacked impartiality.

The foregoing discussion does not mean that a criminal defendant has no remedy when his attorney fails to object to especially egregious comments from the trial judge. The defendant can advance a claim of ineffective assistance of counsel. The defense attorney is required to zealously defend his client, and that zealous representation may include pointing out to the trial judge any improper comments the trial judge makes-especially where the comments are so egregious that a mistrial would be required. Litigation of ineffective assistance claims allows a court to consider any trial strategy the defense attorney might have had and whether the defendant was actually prejudiced. So an avenue does exist for addressing objectionable comments to which no objection is made. As Justice Taft observed in his concurring opinion in the court below, the doctrine of ineffective assistance of counsel obviates the need to use a doctrine of fundamental·error as a means to correct cases in which an accused was deprived of a fair trial.[21]

Because appellant failed to preserve error, I would affirm the judgment of the Court of Appeals.

---

**20.** *Carter v. Kentucky*, 450 U.S. 288, 301, 101 S.Ct. 1112, 67 L.Ed.2d 241 (1981); *see also Mitchell v. United States*, 526 U.S. 314, 332, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999)(Scalia, J. dissenting).

**21.** *Blue v. State*, 983 S.W.2d 811, 815 (Tex. App.—Houston [1st Dist.] 1998)(Taft, J. concurring).